**Leonard S. THIER, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. CIV.A. 97–635.
No. CRIM.A. 94–112.

United States District Court, M.D. Pennsylvania.

May 27, 1998.

Leonard S. Thier, Pro Se.

Bruce Brandles, Asst.U.S.Atty., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Pending before the Court is a motion for habeas corpus relief filed by the Petitioner pursuant to 28 U.S.C. § 2255 with a supporting Affidavit and a "Memorandum of Law" in support of his motion for post-judgment relief. (Doc. 56). The Petitioner seeks to establish that his counsel's representation was ineffective within the context of his guilty plea. Mr. Thier argues that his sentence should be vacated and that his guilty plea be withdrawn. The Government filed a response to the Petitioner's motion (Doc. 65) and the Petitioner submitted an additional affidavit and reply brief. (Doc. 68). For the reasons set forth in this Memorandum and Order, we shall deny the Petitioner's habeas corpus motion.

-A-

## FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 1994, the Petitioner was named in a 31–count indictment charging him with the following offenses: 1. Engaging in the business of importing and dealing in explosive materials without a license, in violation of Title 18, United States Code, Section 842(a)(1); Storage of explosive materials in a manner not in conformity with regulations promulgated by the Secretary of the Treasury, in violation of Title 18, United States Code, Section 842(j); Smuggling explosive materials into the United States, in violation of Title 18, United States Code, Section 545; Entry of explosive materials into the United States by means of false statements and documents, in violation of Title 18, United States Code, Section 542; Laundering of Monetary Instruments, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(I) and (a)(2)(A); and Structuring transactions to evade reporting requirements, in violation of Title 31, United States Code, Sections 5324 and 5322(b). (Doc. 1).

The indictment was the result of an investigation by the Bureau of Alcohol, Tobacco and Firearms, the Internal Revenue Service and the United States Customs Service, in conjunction with a federal grand jury, into the illegal importation and distribution of fireworks in the northeastern United States. As the United States has highlighted, the investigation initially focused on an individual by the name of Joseph Monteforte. However, through the governments focus on Monteforte, the investigation "expanded" and "led" to Leonard Thier. (Doc. 65, p. 2).

According to the United States, the Petitioner was first contacted by federal agents on March 25, 1993 when he was interviewed with regard to his involvement in the sale and distribution of class B fireworks. Thier admitted that at one point in 1991 he had received approximately fifty cases of class B fireworks from Joseph Monteforte in exchange for an unknown quantity of class C fireworks. On May 4, 1993, the Petitioner testified at the grand jury proceeding which was investigating illegal fireworks distribution in the northeastern United States. According to the government, the Petitioner stated that he dealt "strictly in class C" fireworks and that the exchange with Monteforte was an isolated incident. *Id.* at p. 3.

Subsequent to the Petitioner's grand jury testimony, the government alleged that it had obtained conclusive evidence that the Petitioner was engaged in the importation and distribution of illegal fireworks. Moreover, the United States allegedly determined that Thier had laundered the proceeds gained from his illegal activity "by structuring the deposit of huge amounts of cash into his bank accounts and by wiring and transferring funds overseas." *Id.* at p. 3. The government's investigation revealed that the Petitioner "owned and operated" Theta–Thier Industries which engaged in both the legal and illegal importation and distribution of fireworks. The proceeds generated from this business were deposited into a number of bank accounts. Thus, the monies in these

accounts became commingled with funds received from the illegal and legal activities of Mr. Thier. *Id.* at pp. 3–5.

On June 2, 1994, the petitioner was arraigned before this Court and pled not guilty. The Petitioner was scheduled to go to trial on August 9, 1994. On June 16, 1994, the United States filed a status report pursuant to the Order of this Court dated June 2, 1994, in which it indicated that counsel for both parties met on Tuesday June 14, 1994, and all discoverable materials under Fed. R.Crim.P. 16(a) were made available for inspection and copying. (Doc. 10).

On July 13, 1994, the Petitioner signed a plea agreement in which he pled guilty to counts one, two, and three of the indictment. The United States agreed to dismiss the remaining 28 counts listed in the indictment. In addition, the government agreed to "make no specific recommendation as to the length or type of sentence and forego the forfeiture of the Thier residence." *Id.* at p. 7. The plea agreement was not filed until August 1, 1994, and the Petitioner did not appear in court to plead guilty until August 17, 1994. (Doc. 12).

As a result of the plea to these three counts, the Petitioner faced maximum penalties of 35 years of imprisonment and maximum fines of $750,000.[1] The Pre–Sentence report which was accepted and approved by the Court based on a total offense level of 27 and a criminal history category of 1 called for an imprisonment range of 70 to 87 months and a fine range between $12,500 and $500,-000. On March 8, 1995 the Government filed a motion for a downward departure pursuant to § 5K1.1 of the United States Sentencing Guidelines based on the defendants cooperation. (Doc. 36). Defense counsel argued for a departure beyond that recommended by the Government.

On March 9, 1995, the Petitioner was sentenced to a 60 month term of incarceration to be followed by two years of supervised release, a $12,000 fine and a $150 special assessment. (Doc. 51). A Judgment and Commitment Order was entered on March 17,

1995 in which the Petitioner was ordered to surrender to the United States Bureau of Prisons on April 17, 1995. (Doc. 39).

On March 31, 1995, Thier filed an appeal to the United States Court of Appeals for the Third Circuit which was dismissed as untimely on June 9, 1995. In addition, the Petitioner filed a motion for release pending appeal on April 14, 1995 which was denied on May 12, 1995. (Doc. 56, p. iv, Doc. 65, p. 12).

-B-

1

## LEGAL DISCUSSION

The relief sought under 28 U.S.C. § 2255 is reserved for extraordinary situations. *United States v. Chaverra–Cardona,* 1998 WL 135620, *2 (N.D.Ill.) (*citing Prewitt v. U.S.,* 83 F.3d 812, 816 (7th Cir.1996)). *See Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). In order to succeed on a § 2255, motion a convicted defendant must show either that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.* Habeas corpus is not a substitute for a direct appeal and, consequently, is rarely the appropriate means by which to raise new arguments that the petitioner had the opportunity to raise on direct appeal. *Id.* There are, however, certain narrow exceptions to this rule. An issue not raised on direct appeal may be collaterally reviewed if the habeas petitioner can show good cause for his failure to raise the claims on direct appeal and actual prejudice resulting from the failure to raise those claims. *Id.*, *citing Reed v. Farley,* 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Alternatively, a habeas petitioner may raise a new argument if a refusal to consider the issue would lead to a fundamental miscarriage of justice. *Id.*

In the case at bar, Thier contends that his sentence should be corrected or set aside

---

1. The maximum term of imprisonment on Count 1, a Class D felony, is five years pursuant to 18 U.S.C. § 371. The maximum term of imprisonment on Count 2, a Class C felony, is ten years pursuant to 18 U.S.C. § 844(a). The maximum term of imprisonment on Count 3, a Class C felony, is twenty years pursuant to 18 U.S.C. § 1956(a)(2). Pre–Sentence Report at p. 17.

under § 2255 on the grounds that his counsel was ineffective. A defendant has a Sixth Amendment right to "reasonably effective assistance" of counsel. The United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), held that the test for judging any claim of ineffectiveness of counsel is whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. The Court developed a two-prong test requiring the defendant to show: (1) counsel's performance was deficient and, (2) the deficient performance prejudiced the defense. Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Our Court of Appeals has reiterated that in order to establish ineffective assistance under *Strickland,* a habeas petitioner must: "show that his attorney's representation fell below an objective standard of reasonableness" and "any ineffectiveness that appears prejudiced the defense." *Deputy v. Taylor,* 19 F.3d 1485, 1493 (3d Cir.1994), *cert. denied,* 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994).

■ Under the first prong of the standard set forth in *Strickland,* there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after the conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong

> presumption that counsel's conduct falls within the wide range of reasonable professional assistance; . . . .

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ In order to satisfy the second prong of the *Strickland* test, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. 2052.

■ In the context of a guilty plea, a movant must show that (1) his or her counsel's representation fell below an objective standard of reasonableness demanded of attorneys in criminal cases; and that (2) there is a reasonable probability that, but for counsel's errors, he or she would have proceeded to trial instead of pleading guilty. *U.S. v. Nahodil,* 36 F.3d 323, 326 (3d Cir.1994) (*citing Hill v. Lockhart,* 474 U.S. 52, 56–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

**2**

**PETITIONER'S CLAIMS**

In the instant case, Thier claims that his counsel's legal representation was ineffective. He asserts that his lawyer:

1. failed to communicate with petitioner after receiving his fee retainer payment, and failed to respond to petitioner's increasingly-concerned attempts over time to meet with said attorney so as to review the case;

2. neglected to secure discovery so as to understand the evidence in the governments case, to weigh same, and to plumb for possible flaws;

3. ignored the case for months, did not look beyond the bare allegations of the accusatory instrument, and did not question the defendant as to the merits of the government's claims;

4. failed to perform rudimentary research necessary to determine whether all of the seized fireworks included in the charges against petitioner were Class B fireworks subject to licensure for those who would deal commercially therein, or to the con-

trary were, in fact, § 1.4(g) consumer fireworks not subject to licensure and thus excludible from consideration as part of the sentencing process.

5. failed to review the Grand Jury testimony in which the petitioner allegedly falsely testified, or to review these allegations with petitioner;

6. summarily called the petitioner into his office just 19 days prior to the scheduled trial date to pressure him into signing a plea agreement whereby he conceded substantial rights and committed to enter a Guilty plea, all without his having been accorded the right to reflect upon such course of action, or to review discovery, or to explore possible defenses;

7. did not allow petitioner the opportunity to fully read or in any way reflect upon said agreement;

8. failed to conduct legal research of critical issues, including (1) the quantity of illegally-imported fireworks upon which the government based the applicable Guidelines point total, (2) the calculation of total funds appropriate for the money laundering point total calculation under U.S.S.G. § 2S1.1(b)(2), and then (3) whether the facts of the case fell so far from the "heartland" of the typical money-laundering situation that counsel should request either the abandoning of and disregard altogether of U.S.S.G. § 2S1.1(a)(1) as a basis for imposition of sentence, or at the very least a downward departure from same in respect thereof, and lastly (4) the appropriateness of the two-level enhancement under U.S.S.G. § 3C1.1 for "perjury;"

9. Did not discuss with the petitioner the Pre–Sentencing Report until the day of sentencing, and advised petitioner that there was no need to concern himself with any inaccuracies therein;

10. failed to communicate with the United States Probation Office attacking pertinent inaccuracies and improper proposed sentencing adjustments in the Pre–Sentence report; and,

11. failed to submit a pre-sentencing memorandum and/or to argue at sentencing those critical issues having an over-whelming impact on the sentence imposed, *to wit:* the quantity of fireworks bearing on the offense level; the dollar volume for the money-laundering Guideline; whether the facts of the case fell so far from the "heartland" of the typical money-laundering situation that this guideline should have been abandoned altogether as a basis for sentencing, or at the very least required a downward departure from same in respect thereof; and attacking the two-level enhancement under U.S.S.G. § 3C1.1 proposed by Probation or "perjury."

We agree with the governments categorization of the Petitioner's complaints into actions taken by the Petitioner's counsel prior to the entry of the guilty plea on August 17, 1994 and the actions taken by counsel subsequent to the guilty plea and prior to sentencing on March 9, 1995. (Doc. 65, pp. 14–15). Applying the above-mentioned standards for ineffectiveness, we determine that the record fails to substantiate the Petitioner's contentions.

**3**

**COUNSEL'S ACTIONS PRIOR TO PLEA**

First, we will address the Petitioner's contentions as they relate to counsel's actions prior to Mr. Thier's plea of guilty. The Petitioner's initial complaints are premised upon his contention that his attorney failed to research the applicable legal issues, neglected to secure discovery, and failed to adequately communicate to the Petitioner the developments and documentation in the case. We reiterate that our analysis is based upon the standard set forth in *Strickland.* We note that the Third Circuit Court of Appeals has addressed the issue of a defense counsel's pretrial investigation in the context of a *Strickland* analysis and has concluded that a defense counsel's actions are to be given a heavy measure of deference. *Lewis v. Mazurkiewicz,* 915 F.2d 106, 111 (3d Cir. 1990).

As the Supreme Court enunciated:

[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate

must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.

*Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

Our Circuit Court of Appeals explained this reasoning in stating that "the range of reasonable professional judgments is wide and courts must take care to avoid illegitimate second-guessing of counsel's strategic decisions from the superior vantage point of hindsight." *U.S. v. Gray,* 878 F.2d 702, 711 (3d Cir.1989). While we do recognize that there exists a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, we also note that "the Supreme Court certainly did not intend the Strickland analysis to be a total barrier to relief." *Sullivan v. Fairman,* 819 F.2d 1382, 1391 (7th Cir.1987). Check this cite.

■ Typically, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial." *Gray,* 878 F.2d at 711. However, as we previously noted, in the context of a guilty plea, a movant must show that (1) his or her counsel's representation fell below an objective standard of reasonableness demanded of attorneys in criminal cases; and that (2) there is a reasonable probability that, but for counsel's errors, he or she would have proceeded to trial instead of pleading guilty. *Nahodil,* 36 F.3d at 326 (*citing Hill v. Lockhart,* 474 U.S. 52, 56–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). It is the opinion of this Court that the Petitioner has failed to show

that a reasonable probability exists that, but for his counsel's errors, he would have proceeded to trial instead of pleading guilty.

When analyzing the actions of a defense counsel in terms of a guilty plea, we note that there is no necessity for a defense attorney to do all of the work related to trial strategy. How a lawyer acted or failed to act is different in a case that was plea bargained versus a case that progressed to trial and verdict. In this case, the Defendant admitted guilt so the issue becomes whether or not the plea bargain was a valid one.

Today, there are different obligations of plea bargaining which stem from the constraints set forth in the United States Sentencing Guidelines. Bargaining nowadays becomes first, more important, and secondly, much more informed. Prior to the implementation of the Sentencing guidelines, the goal of defense attorneys in the context of plea bargaining was to avoid the potential maximum sentence which the defendant was facing. However, through the guidelines, defendants and counsel know what effects sentence computation, what the exact sentence will be, and how it compares with maximum statutory penalties. Thus, bargaining becomes more informed.

After the implementation of the United States Sentencing Guidelines, many predicted that there would be more people going to trial under the guidelines system than ever before. This prediction has proven inaccurate. In fact, the number of pleas has increased. One reason for this is that plea bargaining has become a much more important part of the defense attorney's duty and strategy.

■ In terms of this case, our basic question is whether or not a reasonable probability exists that, but for counsel's errors, Mr. Thier would have proceeded to trial instead of pleading guilty? The answer to that question is clearly in the negative based upon the fact that the Petitioner did admit his guilt and that he was the beneficiary of an excellent bargain. It is inconceivable to this Court that the Petitioner would have proceeded to trial instead of pleading guilty. The terms of the guilty plea resulted in the

dismissal of 28 of the 31 charges listed in the indictment. In addition, the United States agreed to make no specific sentencing recommendation and to forego the forfeiture of the Thier residence. The Petitioner's counsel also successfully persuaded the government to move for a downward departure based upon the cooperation that the Petitioner did provide to the government, a bargain clearly to the Petitioner's great benefit. To achieve such a plea agreement, defense counsel had to be well prepared and well acquainted with all aspects of the case.

Moreover, the Petitioner appeared before the Court for a lengthy guilty plea colloquy at which time he had the opportunity to express to the Court any dissatisfaction that he may have had with his counsel or the plea agreement he agreed to. (Doc. 64). Mr. Thier was explicitly informed as to the seriousness of the plea proceeding and the Court asked the Petitioner if he had any reservation about the plea agreement or his counsel's representation. Specifically, the Court informed the Petitioner:

The decision to enter a plea of guilty is a very important matter and a very serious matter because a plea of guilty carries with it serious consequences and namely and most importantly that you would face serious sentences including prison terms.

And so you should never enter a plea of guilty unless you are certain that you acknowledge that you committed the offenses which are charged . . .

And I ask you to listen carefully as I explain your rights to you and then to listen carefully and answer me fully all the questions that I will be asking you because I have to decide if you are making this plea voluntarily and with the full understanding of what it means to plead guilty and what you are pleading guilty to . . .

(Doc. 64, pp. 5–6).

In addition, the following dialogue indicates that Mr. Thier knowingly and voluntarily entered into the plea agreement:

THE COURT: Mr. Thier, when you decided to enter a plea of guilty in this case, did you know that by entering your plea of guilty you were giving up your right to be presumed innocent?

LEONARD THIER: Yes, sir.

THE COURT: Did you know you were giving up your right to help select the jurors who would make up the jury in this case?

LEONARD THIER: Yes.

THE COURT: And did you know you were giving up your right to see and hear the witnesses and the evidence against you?

LEONARD THIER: Yes.

THE COURT: Did you know you were giving up your right to testify and to call witnesses on your own behalf?

LEONARD THIER: Yes, sir.

THE COURT: Has anybody forced you or used any threats, any friends or police or foes or counsel or anybody else, family, used any threats or put on any pressure on you in order to make you plead guilty?

LEONARD THIER: No, sir.

THE COURT: Has anybody made any promises other than what is in the plea agreement offered by the Government, promised you anything about the sentence or what might happen to you as a result of the plea agreement that caused you to plead guilty?

LEONARD THIER: No, sir.

(*Id.* at pp. 13–14).

With regard to the counsel's representation of the Petitioner, the Court asked the following questions:

THE COURT: And you've been represented throughout this matter by Mr. Kane who is here with you this morning; is that correct?

LEONARD THIER: Most of the time, yeah.

THE COURT: Has he explained your rights fully to you as I've explained them to you this morning and did he take the opportunity to review these with you so you know what you are facing here today?

LEONARD THIER: Yes, he did.

THE COURT: And has he done that in a fashion that you were able to understand

all of these things that we are talking about this morning?

LEONARD THIER: Yes.

*Id.* at pp. 11–12.

In addition to the above highlighted portions of the guilty plea colloquy, the Petitioner also submitted a "Statement of Defendant" (Doc. 17) in which he stated that he was satisfied with the representation of his attorney.

The Petitioner is an intelligent person. He has had the advantage of a high school education plus some additional college training, and many years of successful business involvement. He has also appeared in criminal court on several previous occasions, each time represented by counsel.

Our review of the plea hearing shows an effort by this Court to ensure that the Petitioner was well aware of the offenses he was charged with, and the offenses to which he was pleading guilty. It is evident that Mr. Thier entered the plea agreement knowingly and voluntarily, and he knew the sentence was at the low end of the range prescribed in the guidelines. The Petitioner has failed to provide this Court with any evidence which would indicate that he would not have pleaded guilty and would have insisted on a trial.

The Petitioner has also failed to show unreasonable performance by his attorney. Based upon our review of the guilty plea proceeding, the motions, briefs, and other documentation, it is evident that an overwhelming amount of evidence existed which reflected the Petitioner's guilt. Thier has provided no evidence showing that his attorney's performance fell below an objective standard of reasonableness in allowing him to plead guilty instead of proceeding to trial.

## 4
## COUNSEL'S ACTIONS PRIOR TO SENTENCE

We will now address the Petitioner's complaints as to his counsel's actions between the time of the guilty plea and the sentencing. He first alleges that his counsel failed to conduct legal research with regard to "the quantity of illegally-imported fireworks upon which the government based the applicable Guidelines point total." (Doc. 56, p. 10).

The Petitioner's sentencing point total was increased by five levels under U.S.S.G. § 2K1.3(b)(1)(E) because the explosive materials possessed by him exceeded one thousand pounds. U.S.S.G. § 2K1.3(b)(1)(E) provides:

(B) Specific Offense Characteristics

(1) If the offense involved twenty-five pounds or more of explosive materials, increase as follows:

| Weight of Explosive Material | Increase in Level |
| --- | --- |
| (A) At least 25 but less than 100 lbs. | add 1 |
| (B) At least 100 but less than 250 lbs. | add 2 |
| (C) At least 250 but less than 500 lbs. | add 3 |
| (D) At least 500 but less than 1000 lbs. | add 4 |
| (E) 1000 lbs. or more | add 5 |

The Petitioner contends that his attorney failed to recognize the distinction between Class B and Class C fireworks for purposes of determining the total amount of fireworks in relation to the total weight determination under § 2K1.3(b). He states that his attorney failed to "point out to the sentencing court the distinction between the fireworks seized as being partially illegal but partially not illegal constitutes plain error." (Doc. 56, p. 23). We disagree.

■ Defense counsel would have to show that "the weight of all the class B fireworks Thier smuggled into the United States was less than 1,000 pounds." The Bureau of Alcohol, Tobacco and Firearms estimated that the total weight of the confiscated class B fireworks was at least 8,600 pounds. (Doc. 65, p. 25). The Petitioner acknowledges that he had imported approximately 4,000 cases of class B fireworks from China from November 1990 to December 1993. On the basis of these facts, it would be an inordinately difficult task for defense counsel to argue for a reduction of illegal fireworks below 1,000 pounds. *Id.* In providing added points as is done in 2K1.3(b) the number of pounds is used to delineate additional or greater culpability. It is often difficult to establish weight with great precision. What is required, therefore, is the reasonable estimate under all the circumstances, and the estimate of 1,000 pounds is certainly reasonable here. *See generally, U.S. v. Taftsiou,* 144 F.3d 287, 294 (3rd Cir.1998). We find this illogical and fail to give any merit to this position.

Next, the Petitioner argues that his defense counsel was ineffective based upon his failure to object to the probation Office's calculation of a money-laundering enhancement under U.S.S.G. § 2S1.1(b)(2). (Doc. 56, p. 23). Thier's sentence was enhanced by two levels because the value of the funds laundered exceeded $200,000. Thier posits that only a small amount of the $222,000 "(as little as $7,800 and no more than $11,300) was attributable to petitioner's unlawful activity." (Doc. 56, pp. 23–24). Thus, he argues that either sum does not result in an enhancement under § 2S1 .1(b)(2) and, therefore, his counsel was negligent in not objecting to the Pre–Sentence Report with regard to this issue. *Id.*

The issue for us to determine is whether the commingled funds derived from both legal and illegal activities satisfy the "total amount" of money laundered for the purposes of the money laundering enhancement. The Petitioner makes arguments, heard with some frequency, about the money laundering charges, but he cites absolutely no authority that the charge was improperly made or applied in this case.

■ Section 2S1.1(b)(2) provides for an enhancement of 2 levels where the "value" of the funds exceeds $200,000. U.S.S.G. § 2S1.1(b)(2). According to the Pre–Sentence Investigation, funds in the amount of $222,069.49 were laundered stemming from cashiers checks and wire transfers that Thier had made to his suppliers overseas. Pre–Sentence Report at p. 16. The government stipulates that it is not known "what portion of this sum was the proceeds of unlawful activity as opposed to the proceeds of his legitimate activity ..." We agree with the governments conclusion that it is immaterial what percentage of the $222,069.49 was attributed to Thier's illegal activity. (Doc. 65, p. 28). Once the funds resulting from the Petitioner's illegal activity, regardless of the amount, became commingled, the entire amount satisfied the elements necessary to establish a sufficient enhancement under § 2S1.1(b)(2).

Under 18 U.S.C. § 1956(a)(1)(A)(i), it must be shown that a defendant knows that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, or conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—with the intent to promote the carrying on of specified unlawful activity in order to satisfy the elements necessary to establish the laundering of monetary instruments. 18 U.S.C. § 1956(a)(1)(A)(i) (1998). The Ninth Circuit has held that "under the money laundering statute [18 U.S.C. § 1956], due to the fungibility of money, it is sufficient to prove that the funds in question came from an account in which tainted proceeds were commingled with other funds." *U.S. v. Garcia*, 37 F.3d 1359 (9th Cir.1994), *cert. denied*, 514 U.S. 1067, 115 S.Ct. 1699, 131 L.Ed.2d 562 (1995).

The Third Circuit has addressed a similar situation where a defendant had defrauded insurance plan members out of 34 million dollars in insurance premiums. For purposes of sentencing, the District Court included monies derived from the fraud in addition to $1.8 million attributed to the defendants legitimate salary. The defendant objected to the inclusion of his salary for purposes of the money laundering enhancement arguing that his salary could not be connected to his illegal activity. *U.S. v. Sokolow*, 91 F.3d 396 (3d Cir.1996). The Court of Appeals held that the defendant's $1.8 million salary "was properly considered 'relevant conduct' under the Sentencing Guidelines even though this amount was not charged in the money laundering counts." *Id.* at 411. Although this case was decided subsequent to the guilty plea, we find the analysis relevant to the case at bar.

"[M]oney laundering disperses capital from lawfully operating economic institutions to criminals in and out of the country." *U.S. v. Gallo*, 927 F.2d 815, 824 (5th Cir.1991). Thus, it is not necessary to address the harm caused by the funds specifically allocated to the funds derived from the illegal activity when the cumulative affect of the commingled monies resulted in a continuation of the money laundering scheme. In *U.S. v. Jackson*, 935 F.2d 832, (7th Cir.1991) the Seventh Circuit stated that it was not the intent of Congress to give participants of unlawful ac-

tivity a way to "prevent their own convictions under the money laundering statute simply by commingling funds derived from both 'specified unlawful activities' and other activities." *Id.* Thus, it was suggested that the act of commingling "is itself suggestive of a design to hide the source of ill-gotten gains that the government must prove ..." *Id.*

The Petitioner's argument is not grounded in law existing in the Third Circuit and trial counsel is not expected to base an argument on theories that have not been accepted or acknowledged. Here counsel did make this argument, in general terms, that the Petitioner's illegal conduct was only a small part of his business, and indeed the Court apparently accepted that argument as part of the reason for departure.

According to the Pre–Sentence Report, Thier was engaged in a money laundering scheme related to his illegal fireworks activity which he admitted to at the guilty plea hearing. Through the investigation, $222,069.49 was attributed to Thier's activities. His activities were clearly encompassed by the money laundering statute and the sentencing enhancement under the Sentencing Guidelines. Thus, Thier's contention that his attorney failed to object to this enhancement is insufficient to prove ineffectiveness.

The Petitioner further alleges that the money laundering enhancement under the Guidelines does not fall within the "heartland" of the typical money-laundering situation. (Doc. 56, p. 24). We disagree.

■ The money laundering statute clearly is not limited to drug trafficking, but encompasses a variety of offenses. As the government correctly points out, 18 U.S.C. § 1956(c)(7) contains a list of crimes that constitute "specified unlawful activity." Included in this list are: murder, kidnaping, robbery, extortion, destruction of property by means of explosive or fire, fraud, destruction of aircraft, violence at international airports, and retaliating against federal officials. Although this list is not exhaustive, it demonstrates the breadth of offenses encompassed by the statute and highlights the fact that the Petitioner's money laundering offenses related to his fireworks smuggling are not insulated. Thus, the Petitioner also fails to

prove ineffectiveness with regard to his counsel's alleged failure to object on the "heartland" issue.

Because of our reasoning on the application of the money laundering statute, the Petitioner's argument that his case falls outside the heartland must fail. Any attempt by defense counsel to make such an argument would not only have failed but might have prejudiced his opportunity to receive a downward departure.

**5**

## ENHANCEMENT FOR OBSTRUCTION

Finally, the Petitioner alleges that his counsel failed to object to the two level enhancement for obstruction or impeding the administration of justice under section 3C1.1 of the United States Sentencing Guidelines. (Doc. 56, p. 36). According to the Pre–Sentence Report, the Petitioner received a two level enhancement because he obstructed justice by committing perjury when he testified in at the Federal Grand Jury. Specifically, Thier stated to the grand jury that he dealt strictly in class C fireworks. (Pre–Sentence Report, p. 8).

Section 3C1.1 of the United States Sentencing Guidelines provides:

> If the defendant willfully obstructed or impeded or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.

Application note 3(b) provides that committing, suborning or attempting to suborn perjury is the type of conduct to which this enhancement applies. Application note 5 provides that "material" evidence, fact, statement or information, as used in this section means evidence, fact, statement or information that, if believed, would tend to influence or affect the issue under determination.

The Petitioner contends that he did not commit perjury during the grand jury investigation because his statement was not material to the grand jury's investigation. He alleges that his statement had no bearing on

the "Monteforte grand jury" and therefore is immaterial. (Doc. 56, p. 38).

The government posits that this "materiality argument is unpersuasive because the grand jury Thier lied to was not the 'Monteforte grand jury' and was not simply considering evidence against Monteforte." (Doc. 65, p. 35). The government contends that the federal grand jury was investigating the sale and distribution of illegal fireworks by a number of people, including Thier. *Id.*

Based upon our review of the Pre–Sentence report, the grand jury investigation was premised upon an effort by the federal government to investigate the distribution of illegal fireworks in the eastern part of the United States.

■■■ Thier's testimony was material to the grand jury investigation. *U.S. v. Cusumano*, 943 F.2d 305, 315 (3rd Cir.1991). We recognize that to be material, "testimony need not directly concern an element of a crime for which the grand jury may indict." *U.S. v. Nazzaro*, 889 F.2d 1158, 1165 (1st Cir.1989). Thus, "given the wide-ranging investigative function reserved to grand juries, courts must indulge comparable breadth in construing the materiality of the panel's inquiries." *U.S. v. Moreno Morales*, 815 F.2d 725, 747 (1st Cir.), *cert. denied*, 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397 (1987).

Even assuming that the testimony of Thier was nowhere connected to the investigation of the grand jury, his argument fails. The testimony of the Petitioner was crucial to the investigation of Mr. Monteforte and the illegal activities of others, including himself. The testimony of Mr. Thier directly related to the investigation by the government to the illegal fireworks distribution in the eastern United States even though the investigation was not initially targeting him as the key figure. Through Thier's testimony, it was finally determined the extent of his smuggling activity. Thus, his testimony "was within the ambit of, and conspicuously materrial to, the grand jury's investigation." *Nazzaro*, 889 F.2d at 1165. Our review of the Pre–Sentence report, the guilty plea, and the sentencing transcript, show that this Court based its enhancement determination on the preponderance of the evidence with which it was presented. *U.S. v. McDowell*, 888 F.2d 285, 291 (3rd Cir.1989). His contention that he was confused or was mistaken is not valid in light of the circumstances of his testimony. Therefore, his attorney was not ineffective for failing to object to this enhancement.

### 6
### DISCUSSION OF PRE–SENTENCE REPORT

■ Thier's contention that his counsel failed to discuss the Pre–Sentence Report with him until the day of sentencing is also meritless. Even if the discussion did not occur until the day of sentencing, it is not sufficient to prove ineffectiveness. Thier still had the opportunity to review the Pre–Sentence Report and he has failed to provide any evidence which shows that the late discussion would have impacted his decision to plead guilty instead of proceeding to trial.

Thier's argument that his counsel failed to submit a pre-sentencing memorandum is also meritless. Defense counsel submitted a "Sentencing Memorandum" on March 8, 1995. (Doc. 65, Exhibit 9). It is simply not enough to prove ineffectiveness to state that counsel chose to argue different issues than those which were set forth in the "Sentencing Memorandum." Thier's counsel successfully argued for a downward departure based upon sound strategy.

### -C-

The Petitioner has not shown that his counsel's performance was unreasonable. Through our analysis of the documentation submitted by both parties, Thier has provided no evidence showing that his attorney's performance fell below an objective standard of reasonableness in allowing him to plead guilty. Furthermore, it is evident that the Petitioner entered into a beneficial plea agreement knowingly and voluntarily. The Petitioner has failed to provide evidence to this Court which would indicate that he would not have pleaded guilty and would have insisted on a trial.

To accept much of the Defendant's argument would require the Court to improperly use hindsight and second guessing. The is-

**436**

sues raised by the Petitioner go beyond counsel's duty to achieve a good bargain under all of the circumstances of this case and reflects a latter day dissatisfaction with the sentence rather than a true denial of guilt or proof of a weak case that would have convinced the Petitioner to go to trial rather than plead guilty. The petition will be denied.

### ORDER

NOW, this 27th Day of MAY, 1998, it is hereby ORDERED that:

1. The Petitioner's motion for habeas corpus relief filed pursuant to 28 U.S.C. § 2255 is denied.

2. By this Order, we determine that the Petitioner has failed to show that he would have proceeded to trial instead of pleading guilty. Thus, he has failed to show that his counsel was ineffective.

3. The Clerk of Court is directed to close Civil Action No. 97–635.

4. Based on the Court's conclusion herein, there is no basis for the issuance of a certificate of appealability.