UNITED STATES of America, Appellee,

v.

Norman WORKMAN, aka Norm, aka Tony, Defendant–Appellant.

No. 270, Docket 95–1330.

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1996.

Decided April 1, 1997.

William J. Hochul, Jr., Assistant United States Attorney, Buffalo, NY, (Patrick H. NeMoyer, United States Attorney for the Western District of New York, Buffalo, NY), for Appellee.

Bruce R. Bryan, Syracuse, NY, for Defendant–Appellant.

Before: KEARSE, LEVAL, and NORRIS,* Circuit Judges.

LEVAL, Circuit Judge:

Norman Workman appeals from a judgment of the United States District Court for the Western District of New York (Curtin, J.), convicting him, upon his guilty plea, of racketeering in violation of 18 U.S.C. § 1962(c) and illegal use of a communication facility to commit a narcotics offense in violation of 21 U.S.C. § 843(b). The court sentenced Workman to concurrent terms of imprisonment of 95 months for the racketeering count and 48 months for the communication count, concurrent terms of supervised release of three years for the racketeering count and one year for the communication count, a mandatory special assessment of $100, and a $1,000 fine, with payments to be scheduled "[a]t a rate to be determined by the Bureau of Prisons."

Workman argues principally that: (1) the court should not have fined him $1,000 because he is indigent, and in any event should

* The Honorable William A. Norris of the Ninth Circuit, sitting by designation.

not have delegated the scheduling of payments to the Bureau of Prisons; (2) the probation department's failure to interview him in the preparation of the presentence report and his receipt of the report less than 35 days prior to sentence violated his rights under Fed.R.Crim.P. 32, as well as his due process rights under the Constitution; (3) his attorney provided ineffective assistance by failing to raise these arguments at the time of his sentence; and (4) he was entitled to a three-level reduction under the United States Sentencing Guidelines for acceptance of responsibility. We affirm in part and reverse and remand in part.

### Background

On July 10, 1992, Norman Workman was arrested on a warrant pursuant to a 73–count indictment charging him and others with multiple offenses related to the activities in Buffalo of a narcotics trafficking gang known as the LA Boys. The LA Boys was a major drug-trafficking enterprise operating from the late 1980s through the early 1990s, whose members, including Workman, committed murders, kidnappings, and drive-by shootings, in furtherance of their drug conspiracy. Shortly after his arrest, Workman entered into a plea and cooperation agreement with the government (the "Agreement").

The Agreement was of the type specified in Fed.R.Crim.P. 11(e)(1)(C), which if accepted by the court commits the court either to sentence as agreed between the parties or to release the parties from the agreement and allow the defendant to revoke his plea. *See* Fed.R.Crim.P. 11(e)(2); *United States v. Braimah*, 3 F.3d 609, 611–12 (2d Cir.1993); *United States v. Cunavelis*, 969 F.2d 1419, 1422–23 (2d Cir.1992); *United States v. Kemper*, 908 F.2d 33, 37 (6th Cir.1990); USSG § 6B1.3. In exchange for Workman's guilty plea to one count of racketeering and one communication count, the government agreed to dismiss the remaining counts of the indictment against him and the parties stipulated to a combined adjusted offense level of 36.[1] The Agreement also provided that if the

government determined that Workman provided substantial assistance in the prosecution of other LA Boys members, the government would move for a downward departure pursuant to U.S.S.G. § 5K1.1. The parties agreed, however, that in departing downward the court could go no lower than level 30. Level 30 carries a sentencing range of 108 to 135 months imprisonment for criminal history category II.

On January 13, 1992, Workman pleaded guilty before Judge John T. Curtin of the Western District of New York. During the plea colloquy, the court reviewed the Agreement, with specific reference to the maximum potential departure to level 30 and implicitly accepted the Agreement pursuant to Fed.R.Crim.P. 11(e)(2), thereby binding itself to the sentence range provided. *Cunavelis*, 969 F.2d at 1422–23.

Workman proceeded to cooperate; he testified in detail against the violent and dangerous members of his drug-dealing gang and thereby unquestionably placed his life in danger. Deeming Workman's assistance particularly valuable, the government in April 1995 filed a motion pursuant to § 5K1.1 for a downward departure to level 27, thereby releasing the court from its obligation under Rule 11(e)(1)(c) to depart no lower than the stipulated level 30.

At sentencing, noting the value of Workman's cooperation and his acceptance of responsibility, the government urged departure to level 27. Judge Curtin observed that Workman had played a major role in the criminal enterprise and initially refused to depart below level 30. However, after Workman testified to his remorse, the danger his cooperation posed to himself and his family, and his acceptance of responsibility for his conduct, the court reconsidered and imposed a sentence of 95 months, which lies in the upper end of the level 27 range of 78 to 97 months.

Although Workman's guidelines range called for a fine between $20,000 and $200,000, the court found that he was able to pay

---

1. The parties stipulated to criminal history category III. However, they subsequently agreed it should be modified to category II.

only $1,000. Accordingly, the court imposed a fine of $1,000, due immediately, but stayed execution of the fine "provided that [Workman] makes timely installments, on a schedule to be fixed by the Bureau of Prisons while incarcerated." Anticipating that the fine "will be paid before his release," the court did not direct payment during the period of supervised release.

## Discussion

### I. The Fine

■ A. *Imposition.* We can dispose at the outset of Workman's contention that the court should not have imposed the fine of $1,000 due to his indigence. Section 5E1.2(a) of the United States Sentencing Guidelines provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." Current indigence is not an absolute barrier to imposition of a fine. *See United States v. Fermin,* 32 F.3d 674, 682 n. 4 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1145, 130 L.Ed.2d 1104 (1995). Even an incarcerated defendant can earn money in his prison account to pay the fine by working within the prison. Moreover, Workman did not object to the fine at sentencing and has made no showing, even on appeal, that he is unlikely to become able to pay the modest fine of $1,000. We affirm the imposition of the $1,000 fine.

■ B. *Delegation of Scheduling of Fine Payments.* Workman's more significant contention is that the district court lacked authority under 18 U.S.C. § 3572(d) to delegate the scheduling of partial payments of the $1,000 fine to the Bureau of Prisons. In *United States v. Porter,* 41 F.3d 68, 71 (2d Cir.1994), we held, with respect to *restitution* payments, that a district court may not delegate to the probation officer the task of making a payment schedule. *See also United States v. Mortimer,* 52 F.3d 429, 436 n. 8 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 208, 133 L.Ed.2d 141 (1995). We recognized in *Porter* that the scheduling of future restitution payments involved a problem that had "troubled sentencing judges ever since the enactment of the Victim and Wit-

ness Protection Act of 1982," to wit, how to predict at the time of sentence what resources a then-indigent defendant might have in the future. *Porter,* 41 F.3d at 70. But the language of 18 U.S.C. § 3663(f), which provides for restitution, makes the order of restitution "part of the sentencing process," *Porter,* 41 F.3d at 70, and identifies the court as the maker of decisions relating to restitution, and though we sympathized with the district court's dilemma, we concluded that Congress had not intended to allow the district judge to "resolve this dilemma by authorizing a probation officer to make post-sentencing decisions as to either the amount of the restitution ... or the scheduling of installment payments." *Id.* at 71 (citations omitted).

In *United States v. Kassar,* 47 F.3d 562 (2d Cir.1995), we extended that restriction to cover the making of schedules for the payment of fines. We reasoned that because the statutory language in § 3572(d), providing for the assessment of fines, was identical to that in § 3663(f)(1) covering restitution, Congress must have intended the same restrictions for fines as for restitution. *Id.* at 568.

At oral argument of this case the government called to our attention the legislative history of § 3572(d), regarding fines. The government argues that this legislative history reveals Congress's expressed intention that courts *would* delegate the scheduling of deferred fine payments. The Report of the House Judiciary Committee for the Criminal Fine Improvements Act of 1987 explains that new § 3572(d), concerning the time and method of payment of a fine, "eliminates the Sentencing Reform Act requirement that the specific terms of an installment schedule be fixed by the court. The court is thus able to delegate the responsibility for setting specific terms to a probation officer." H.R.Rep. No. 390, 100th Cong., 1st Sess., § 7 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2137, 2143.

Although this legislative history speaks only of delegation to "a probation officer," the government contends that it furnishes an adequate basis to permit delegation as to the scheduling of fines to the Bureau of Prisons, an agency outside the Judicial Branch, regardless whether such delegation is permit-

ted for the scheduling of restitution payments.

We recognize that where the court sets a fine and determines that the defendant cannot make full payment immediately, but will be able to do so in the future, delay of the scheduling of future installments would be eminently sensible. The court cannot know at the time of sentence how the defendant's economic fortunes will vary during the time permitted for payment. If the defendant's resources increase to the point where there is no good reason for further delay, authorities supervising the defendant might reasonably require prompt completion of the payments. There would be no valid reason to delay the public treasury's receipt of funds the defendant is immediately capable of paying. On the other hand, where the defendant's resources are slow to increase, there would be justification for setting a more modest payment schedule. None of this can be known by the court at the time it passes sentence but can be followed by an appropriate supervisory officer during the defendant's service of his sentence.

Although delegating the scheduling of fine payments would free sentencing courts from the awkward inconvenience of having to guess the future, and the legislative history cited by the government suggests that Congress may have intended to allow some delegation, the plain language of § 3572(d) precludes delegation. That section generally requires defendants to pay fines "immediately," but allows sentencing courts, "in the interest of justice," to provide for payment "on a date certain or in installments." It specifies that "[i]f the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless *the court* establishes another schedule." 18 U.S.C. § 3572(d) (emphasis added).

This language requires the sentencing court to set the period in which the defendant must pay the fine and establishes a default installment schedule of "equal monthly payments." While § 3572(d) allows the court to override the statute's default schedule and to fashion its own schedule, it does not permit the court to delegate scheduling

to other authorities. Although the legislative history suggests that the House Judiciary Committee believed its changes to § 3572(d) would allow a sentencing court "to delegate the responsibility for setting specific terms [of an installment schedule] to a probation officer," the language of the statute does not reflect this suggestion—indeed, it appears to contradict it. We adhere to our holding in *Kassar* that § 3572(d) does not allow courts to delegate the scheduling of installment payments for fines. *See City of Chicago v. Environmental Defense Fund,* 511 U.S. 328, 337–39, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994)(holding that statutory text, which omitted rule imputed to statute in legislative committee report, was the "authoritative expression of the law"). We therefore vacate the portion of the sentence requiring the Bureau of Prisons to fix a schedule for Workman's fine payments and remand for resentencing in a manner consistent with this opinion.

## II.  *The Presentence Report*

We reject Workman's argument that the procedures followed in connection with his presentence report require this court to vacate his sentence. On May 3, 1995, the Department of Probation for the Western District of New York prepared a Presentence Investigation Report (the "Report") for the defendant. In paragraph 22, the Report states that "[d]ue to circumstances beyond the control of the U.S. Probation Office, the Defendant was not available to be interviewed." Workman's counsel received the Report on the day prior to sentencing and discussed the Report with Workman immediately prior to sentencing. At sentencing, counsel told the court that he had reviewed the Report with Workman and he did not object to the lack of an interview or the timing of the Report's delivery.

Workman contends that he had an absolute right under Rule 32 to be interviewed by the probation officer in the preparation of the presentence report and that such an interview is necessary to "assure protection of his due process right under the Constitution." Neither of the cases cited by him, however, supports the proposition that a

defendant has a right to be interviewed by the probation officer in preparation of the presentence report. *United States v. Cortes,* 922 F.2d 123, 126–27 (2d Cir.1990)(holding that *Miranda* warnings are not required at a presentence interview) and *United States v. Hicks,* 948 F.2d 877, 885 (4th Cir.1991)(holding that there is no Sixth Amendment right to counsel at a routine presentence interview). It is clear, furthermore, that the probation department's failure to interview Workman did not result from any invidious reason; it was due to the difficulty of producing Workman while holding him in a secret place and concealing his identity in furtherance of the witness protection program.

In any event, we need not rule on whether the right claimed by Workman exists because, even if it does, Workman waived it by failing to object at the time the court imposed the sentence.

■ As to Workman's contention that his rights were violated by providing him with the Report on the last day before sentencing, violating the command of Fed.R.Crim.P. 32(b)(6)(A) that the defendant receive the Report at least 35 days before sentencing, Workman failed to object to that as well. *See United States v. Navejar,* 963 F.2d 732, 734–35 (5th Cir.1992); *United States v. Knorr,* 942 F.2d 1217, 1221 (7th Cir.1991); *United States v. Turner,* 898 F.2d 705, 713–14 (9th Cir.), *cert denied,* 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990).

### III.  *Ineffective Assistance of Counsel*

■ Workman further contends that his counsel rendered ineffective assistance by consenting to the late delivery of the presentence report and the failure to interview Workman in preparation of the presentence report. He argues that because of his counsel's failure, he could not make the court understand fully the extensive nature of his cooperation, correct inaccuracies in the Report, inform the court he had accepted responsibility for his crimes, or present other mitigating factors that should have caused the court to be even more lenient in sentencing.

Workman asks that we find that his counsel's failure to object at sentencing constituted ineffective assistance of counsel, and remand for resentencing. Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we may find ineffective assistance of counsel only upon determining that his attorney's behavior at sentencing "fell below an objective standard of reasonableness" under "prevailing professional norms," *id.* at 688, 104 S.Ct. at 2064–65, and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068.

Workman's proffers on this appeal are insufficient to satisfy the *Strickland* standard. Especially given Workman's undisputed history of criminal and violent conduct, there is no reasonable probability that his sentence would have been different had Workman been interviewed by the probation department or had he received the Report 35 days prior to sentence. He points to no information he would have put forth that was not fully understood by the court.

### IV.  *Three-Level Reduction for Acceptance of Responsibility*

■ Finally, we reject Workman's contention that his sentence should have been lower because the court failed to deduct three levels for his acceptance of responsibility. As noted above, upon the government's motion under § 5K1.1, the court departed from level 36 to level 27. The district judge initially expressed unwillingness to go lower than level 30, but finally agreed to go to level 27 in response to the government's and the defendant's assertions that Workman had not only cooperated in dangerous circumstances but had also accepted responsibility. The court expressly noted that the reduction would cover the defendant's acceptance of responsibility. Furthermore, the judge declined to go lower than the high end of the range covered by level 27.

It is altogether clear that the downward departure accepted by the court encompassed any credit Workman was entitled to receive for acceptance of responsibility. Had he received a formal three-level reduction on

that account, the court would not have sentenced him to any less prison time.

*Conclusion*

The judgment of conviction is affirmed in part and reversed and remanded in part.