UNITED STATES of America

v.

Juan SOTO

No. CRIM 99–00377–01.

United States District Court,
E.D. Pennsylvania.

May 14, 2001.

40

Juan Soto, FCI Fort Dix—5852–West, Fort Dix, NJ, Pro se.

John J. Pease, U.S. Attorney's Office, Philadelphia, PA, for U.S. Attorneys.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

### I. BACKGROUND

On July 6, 1999, Defendant Juan Soto ("Defendant") was indicted by the Grand Jury and charged with one count of possession with intent to distribute more than five grams of cocaine base ("crack") and one count of possession with intent to distribute cocaine powder, in violation of 21 U.S.C. § 841(a)(1), as well as criminal forfeiture under 21 U.S.C. § 853. On August 4, 1999, an information was filed charging that on December 12, 1996 the Defendant was sentenced to 1 to 2 years imprisonment following his conviction on felony drug charges in the Court of Common Pleas of Berks County, Pennsylvania.[1] On August 31, 1999, the Defendant and the Government entered into a written plea agreement.[2] Following an extensive collo-

---

1. The charges consisted of two offenses which were covered by one concurrent sentence.

2. The Guilty Plea Agreement contained the following standard language in ¶ 5:

 If the government *in its sole discretion* determines that the defendant has fulfilled all of his obligations of cooperation as set forth above, at the time of sentencing, the government will:
 a. Make the nature and extent of the defendant's cooperation known to the Court.

 b. Move to allow the Court to depart from the Sentencing Guidelines pursuant to Sentencing Guideline § 5K1.1 and to impose a sentence below any mandatory minimum term of imprisonment pursuant to 18 U.S.C. § 3553(e), *if the government, in its sole discretion, determines that the defendant has provided complete and substantial assistance in the investigation or prosecution of another person who has committed an offense, including testifying at any trial*

quy in open court, we accepted defendant's plea of guilty to both counts on September 2, 1999. At that time we asked the Defendant about his prior convictions and sentence and he acknowledged his prior convictions and prison sentence.[3] The Government fully explained the plea agreement on the record, including the cooperation provisions. (*See* Tr. 9/2/99, at 8–10.) This included information about a motion for downward departure.[4] The Defendant acknowledged on the record that the Government's explanation represented the entire plea agreement and that no additional promises or representa-

tions had been made to him. (*See* Tr. 9/2/99, at 11–12.) We also explained that any objections to the presentence report had to be raised within a certain time limit.[5]

On November 14, 1999 a presentence report was issued which set forth Defendant's prior convictions and sentence in Berks County and the fact that Defendant was represented by counsel. No objections were filed to the presentence report and at sentencing on January 28, 2000 we confirmed with the defense that there were no objections to the presentence report.[6] We also addressed the Defendant

> *or proceeding as required. The defendant understands and agrees that: (1) the government will exercise its sole discretion regarding whether and how to investigate any information provided by the defendant; (2) as of the date of this agreement no determination has been made as to the defendant's eligibility for either a Section 5K1 .1 or Section 3553(e) motion;* and (3) the government may refuse to file a Section 5K1.1 or Section 3553(e) motion if this plea agreement is breached in any way including the commission of a crime after the date of this agreement. (emphasis added).

3. Q. Have you been convicted of a crime before?
 A. Just the time when I ended up in prison, but it wasn't a criminal case. (Mr. Soto confers with counsel)
 A. Yes.
 Q. Okay. Prior convictions of a crime can affect your guideline sentencing level.
 (Tr. 9/2/99, at 13.)

4. The Government's explanation read as follows:
 If the Government, in its sole discretion, determines that the Defendant has fulfilled all of his obligations of cooperation as set forth in the Guilty Plea Agreement, at the time of sentencing the Government will make the nature and extent of the Defendant's cooperation known to this Court, and may in its sole discretion file a motion to allow the Court to depart downwards from the Sentencing Guidelines and to impose a sentence below any mandatory minimum term of imprisonment under the guidelines.

Defendant understands that the Government will make whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution and other matters which the Government deems appropriate. Defendant understands that the Government will comment on the evidence and circumstances of the case, bring to the Court's attention all facts the Government deems relevant to sentencing, correct any inaccuracies in the Presentence Report or the sentencing record, and rebut any statement made by or on behalf of the Defendant. No one has made any promises to the Defendant regarding what sentence the Court may impose.
(Tr. 9/2/99, at 9–10.)

5. Our explanation to the Defendant stated that:
 Your lawyer has an obligation to sit down with you as soon as he gets the Pre–Sentence Report, with an interpreter, and go over it with you so that you can point out any errors in that Pre–Sentence Report to your lawyer, because he must bring any errors to our attention within 14 days of the receipt of the Pre–Sentence Report. This is a time limit set by Federal Rule of Criminal Procedure 32(B)(6)(b). And the Court strictly enforces that time limit and expects that all objections and requests for departure will be raised within that time limit.
 (Tr. 9/2/99, at 25–26.)

6. [THE COURT:] as required by Federal Rule of Criminal Procedure 32(c)3(a), I will ask

in order to give him an opportunity to object and be heard. He confirmed his attorney's statements and said nothing else.[7] On January 28, 2000, the Defendant was sentenced by us to a term of imprisonment of 120 months, a special assessment of $200, supervised release for 8 years, and forfeiture in the amount of $1,583. At the time of this sentence, we informed Defendant about his appellate rights. (*See* Tr. 1/28/00, at 16.) No appeal was ever taken.

On February 21, 2001, more than one year after his sentence had been imposed. Defendant filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[8] In the February 21, 2001 filing, Defendant raised 2 claims: (1) that the Government allegedly breached the plea agreement by not contacting him after the date of sentencing for purposes of obtaining his cooperation; and (2) that Defendant's counsel, Wendell Wylie, Jr., Esquire, was ineffective in allegedly failing to file a notice of appeal on Soto's behalf.

On March 8, 2001, this Court entered an Order under *United States v. Miller*, 197 F.3d 644 (3d Cir.1999). In response, on April 6, 2001, Defendant filed a Motion to Proceed with § 2255 Petition and Motion for Leave to Amend, which, in addition to the issues described above, raised the following additional claims: (3.) that counsel was ineffective in allowing petitioner to plead guilty to an indictment that did not charge an offense and (4.) that the court failed to comply with the mandatory requirement that the Court ask the defendant whether he affirms or denies his prior conviction, and that counsel was ineffective in failing to raise this issue.

## II. INEFFECTIVENESS

 The right to counsel is created under the Sixth Amendment of the United States Constitution. This right, deemed fundamental by the Supreme Court, cannot be denied absent an actual and intentional waiver. *See Wheat v. United States*, 486 U.S. 153, 162, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Supreme Court has established a two-prong test to establish a claim of ineffective assistance of counsel requiring that a petitioner show: (1) that counsel's conduct was deficient, falling "outside the wide range of professionally competent assistance," and (2) that petitioner was prejudiced as a result of that deficient conduct. *United States v. DeRewal*, 10 F.3d 100, 104 (3d Cir.1993) (citing *Strick-*

---

defense counsel if he has received a copy of the presentence report and the Government's memorandum and if he has discussed the presentence report with the defendant on a timely basis.

> MR. WYLIE: Good afternoon, Your Honor. Wendell Wylie on behalf of Mr. Juan Soto. Yes, I have received both the memorandum and the presentence report. I had previously reviewed those with Mr. Soto. He had no objection to the report and no objection to the memorandum, your Honor.

(Tr. 1/28/00, at 10.)

7. [THE COURT:] In spite of the fact that you have indicated to me that your client does not wish to make a statement, I will ask the defendant, Mr. Soto, at this time if there is anything he wishes to say. Mr. Soto, if you disagree with anything your lawyer has said or not said, or done or not done, if there is anything you want to add or present, now is the time to tell me. Do you wish to say anything, or do you disagree with anything? Is there anything that you want to say?

> THE DEFENDANT: I agree with everything my attorney has said.

(Tr. 1/28/00, at 10.)

8. The February 21, 2001 petition is signed by Defendant and is dated "January 27, 2001." Defendant provides no further explanation as to whether the petition was placed in the hands of prison officials or someone else for purposes of mailing, and when this was done.

*land v. Washington,* 466 U.S. 668, 687, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■■■ To satisfy the deficiency prong, a petitioner must show that the lawyer's conduct was definitively below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. In evaluating such a claim, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. We may not use the benefit of hindsight to second-guess tactical decisions made by an attorney, unless those decisions were unreasonable. *See id.* at 690, 104 S.Ct. 2052; *Diggs v. Owens,* 833 F.2d 439, 444–45 (3d Cir.1987) ("An attorney is presumed to possess skill and knowledge in sufficient degree to preserve the reliability of the adversarial process and afford his client the benefit of a fair trial. Consequently, judicial scrutiny of an attorney's competence is highly deferential."). It follows that the mere fact that a tactic might in retrospect appear unsuccessful does not necessarily indicate that it was unreasonable. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■■■ The American Bar Association Standards serve as a guideline in determining the reasonableness of an attorney's performance. *See Government of the Virgin Islands v. Weatherwax ("Weatherwax I"),* 20 F.3d 572, 579 (3d Cir.1994), *rev'd on other grounds, Government of Virgin Islands v. Weatherwax ("Weatherwax II"),* 77 F.3d 1425 (3d Cir.1996); *see also Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. One of the most useful standards in this context is ABA Standard for Criminal Justice § 4–5.2 (3d ed.1993), "Control and Direction of the Case," which dictates what decisions ultimately are to be made by a defendant and which are to be left to a defendant's attorney. Specifically, strategic and tactical decisions such as which

witnesses to call, whether to conduct cross-examination, and what trial motions to make are within the province of the attorney after consultation with the client. *See* ABA Standard for Criminal Justice § 4–5.2(b). The Commentary thereto states that when the attorney in question makes such strategic or tactical decisions, "[o]nly when [his or her] behavior revealed ineptitude, inexperience, lack of preparation or unfamiliarity with basic legal principles [will these] actions amount to ineffective assistance of counsel." *Weatherwax I,* 20 F.3d at 579 (citing ABA Standard for Criminal Justice commentary at 4.67–68). If a decision falls within the realm of the attorney's "strategic decision," we will find that the decision constituted ineffective assistance only if it was inept or incapable of interpretation as sound, or if the attorney failed to consult with his or her client.

Once this first prong has been established, a petitioner must also show that the deficient performance "deprived the defendant of a trial whose result is reliable" by demonstrating a reasonable probability that, but for the attorney's challenged conduct, there would have been a different outcome. *DeRewal,* 10 F.3d at 104 (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We must therefore determine whether any error affected the adversarial balance so substantially that the court proceedings are rendered suspect. *See Lockhart v. Fretwell,* 506 U.S. 364, 368–69, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

## III. DISCUSSION

### A. *Timeliness*

■■■ Under the Anti–Terrorism and Effective Death Penalty Act, effective April

24, 1996, a one year statute of limitations is established for federal prisoners filing habeas corpus petitions under 28 U.S.C. § 2255:

The limitation period shall run from the latest of -

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

No arguments are advanced by Defendant under provisions (2)(3) and (4). The Third Circuit held, in *Kapral v. United States,* 166 F.3d 565, 577 (3d Cir.1999), that when no appeal is filed the one-year period runs from the expiration of the 10–day appeal period set by Fed. R.App. P. 4(b)(1)(A)(i).

■ The Third Circuit has held, in the context of Section 2254, that the time limit is subject to equitable tolling. *See Miller v. New Jersey State Department of Corrections,* 145 F.3d 616, 617 (3d Cir.1998). No grounds are advanced which support equitable tolling. Equitable tolling only applies in rare situations when sound legal principals and the interests of justice demand it. *See Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999).

■ In calculating the timeliness of a prisoner's Section 2255 petition, the Third Circuit gives the petitioner the benefit of the "prison mailbox rule." *See Burns v. Morton,* 134 F.3d 109, 112 (3d Cir.1998); *see also* Fed. R.App. P. 4(c), 25(a)(2)(C). Fed. R.App. P. 4(c)(1) expressly provides that, "[i]f an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule." The court in *Burns* analogized this rule to cases involving petitions for habeas corpus under § 2255, and we therefore apply it to Defendant's case. *See Burns,* 134 F.3d at 112. The Court docket reflects that the Judgment of Conviction and Sentence was entered in Defendant's case on February 1, 2000. Therefore, the deadline for Defendant to file a timely § 2255 petition expired on February 11, 2001, which is 10 days before he filed his § 2255 petition. Although the petition is dated January 27, 2001, it is the date of placement in the prison mail system which is controlling. *See Burns,* 134 F.3d at 112. Although Defendant has not furnished us with any evidence in that regard, it appears from the envelope in which the petition was mailed that the Defendant did not use the prison mail system at his federal correctional institution at Fort Dix, NJ. The letter was post-marked from Trenton, NJ, rather than Fort Dix, and the envelope lacks the customary stamp indicating placement in the prison mail system. The postmark appears to be either February 15 or February 16, 2001. We believe that the ultimate burden of establishing any claims, including those of timeliness under § 2255, lies with the Defendant. *See Adams v. United States ex rel. McCann,* 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (recognizing that petitioner bears the burden of proving all claims for habeas relief); *United States v. Baynes,* 622 F.2d 66, 69 (3d Cir.1980) (same); *Rivera v. M/T Fossarina,* 840 F.2d 152, 155 (1st Cir.1988) (stating that the burden of demonstrating timely appeal is on appel-

lant); *Mroz v. Dravo Corp.,* 293 F.Supp. 499 (W.D.Pa.1968), *aff'd,* 429 F.2d 1156 (3d Cir.1970) (finding that movant bears burden of establishing timeliness of a motion for new trial); *United States v. Sanders,* 255 F.Supp. 876, 879 (N.D.Cal.1966) (explaining that movant bears burden of proving that notice of appeal is timely filed). We have already given the Defendant the required notice under *Miller,* and rather than withdrawing his petition, he has amended it.

It appears that the Defendant may not have filed his petition on a timely basis. Nevertheless, we will give him the benefit of the doubt and find his filing timely. Accordingly, we will review each of Defendant's claims in detail.

### B. *Prior Convictions*

 Defendant contends that this Court never used the exact words set forth in 28 U.S.C. § 851(b) and asked him at sentencing "whether he affirms or denies" his prior conviction. We do not believe that this rises to the level of a constitutional claim. We note, for instance, that claims of error under the Sentencing Guidelines are generally not cognizable on collateral review. *See United States v.. Cepero,* 224 F.3d 256, 268 (3d Cir.2000); *Graziano v. United States,* 83 F.3d 587, 589–90 (2d Cir.1996) (per curiam); *Grant v.. United States,* 72 F.3d 503, 505–06 (6th Cir.1996). We will nevertheless discuss Defendant's claims to the extent that they may be properly before us but unappealable under *Cepero,* 224 F.3d at 265–68.

 We do not read Section 851(b) in the same hyper-technical sense as Defendant. As already discussed, the Defendant had notice of his prior offenses from the Government's information and he affirmed his convictions and sentence under oath at his guilty plea on September 2, 1999. As

the Supreme Court said in *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977):

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. *Machibroda, supra,* 368 U.S. at 495–496, 82 S.Ct., at 514 (§ 2255); *Price v. Johnston, supra,* at 334 U.S. 266, 286–87, 68 S.Ct. 1049, 1060–1061, 92 L.Ed. 1356 (§ 2243).

Facts relevant to sentencing contained in an indictment and plea agreement are conclusively established by the entry of a guilty plea. *See United States v. Dickler,* 64 F.3d 818, 823 n. 7 (3d Cir.1995) (citing *United States v. Parker,* 874 F.2d 174, 178 (3d Cir.1989)). " 'There can be no question that admissions to the court by a defendant during a guilty plea colloquy can be relied upon by the court at the sentencing stage.' " *United States v. Powell,* 113 F.3d 464, 470 (3d Cir.1997) (quoting *United States v. James,* 78 F.3d 851, 856 (3d Cir.1996)). The Defendant never filed a claim that his prior convictions were invalid as required by 21 U.S.C. § 851(c), nor did he in any other way alert the court that he was not standing by his statements at his guilty plea.

After being warned about the need to object, neither counsel nor the Defendant filed any objection to the Presentence Investigation Report which clearly set forth Defendant's prior convictions and sentence

in paragraphs 33–34.[9] Paragraph 32 of the report pointed out that Pennsylvania state law mandated the assignment of counsel to represent defendant with regard to these prior offenses.

Fed.R.Crim.P. 32(b)(6)(B) requires that the parties inform each other and the probation officer in writing of any objections to the presentence report within 14 days of receiving the report. Fed.R.Crim.P. 32(b)(6)(D) provides that for good cause shown the court may allow a new objection to be raised at any time before imposing sentence, however, no such request was made. Under local R.Crim. P. 32.3 ¶ 4, untimely objections are deemed waived. *See also United States v. Workman*, 110 F.3d 915, 920 (2d Cir.1997). Defendant does not give any reason, much less estab-

lish cause and actual prejudice, for his failure to object to his prior convictions in the presentence report and at sentencing.

■■■■ Habeas corpus is not a substitute for an appeal. *See Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482, 2490, 120 L.Ed.2d 225 (1992); *Thier v. United States*, 31 F.Supp.2d 424, 427 (M.D.Pa. 1998). When a federal prisoner did not present his claims in the trial and appellate courts, he must clear a significantly higher hurdle than on direct appeal and show cause for his procedural default and actual prejudice resulting therefrom. *See United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 1593–95, 71 L.Ed.2d 816 (1982). *Frady* applies to sentencing proceedings. *See United States v. Essig*, 10 F.3d 968, 978 (3d Cir.1993).[10] Of course, *Frady* does

---

9.

| Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition |
|---|---|---|
| 8–7–96 (Age 39) | Possession with intent to deliver a controlled substance/ Berks County Court of Common Pleas (Dkt: 2778–96) | 12–12–96: Pled guilty and sentenced to one to two years in the county prison. Federal benefits ordered denied. 12–5–97: Paroled to an INS detainer pending deportation. Parole expiration date set at 8–7–98. |
| On July 12, 1996, a Reading police officer, working in an undercover capacity, purchased four packets of cocaine from the defendant. | | |
| 8–7–96 (Age 39) | Possession with intent to deliver a controlled substance/ Berks County Court of Common Pleas (Dkt: 2779–96) | 12–12–96: Pled guilty and sentenced to 128 days to two years in the county prison, concurrently with 2778–96. Federal benefits ordered denied. 12–5–97: Paroled to an INS detainer pending deportation. Parole expiration date set at 8–7–98. |

10. The Third Circuit, in *Essig*, adopted the lower court opinion in *United States v. Quinones*, 1993 WL 273989 (E.D.Pa. June 24, 1993) and also held that "a defendant who fails to object to errors at sentencing and subsequently attempts to raise them on direct appeal must demonstrate 'cause and prejudice' for that failure." *Essig*, 10 F.3d at 979.

It is doubtful that prejudice could be made out in an appeal, but even if it could be demonstrated the standard of review is one of harmless error. *United States v. Romero–Carrion*, 54 F.3d 15, 18 (1st Cir.1995) (explaining that all Courts of Appeal hold that failure to conduct a § 851(b) colloquy is subject to

harmless error analysis); *United States v. Garcia*, 954 F.2d 273, 278 (5th Cir.1992) (finding no reason for a district court to conduct a hearing on the validity of the prior convictions when a defendant fails to first meet the requirements of 21 U.S.C. § 851(c); *United States v.. Hill*, 142 F.3d 305, 313 (6th Cir.) (concluding that where defendant failed to object at sentencing to his prior drug convictions and failed to comply with requirements of § 851(c), district court's failure to colloquy defendant on prior convictions was harmless error), *cert. denied*, 525 U.S. 898, 119 S.Ct.

not apply to claims of ineffective assistance of counsel, *see United States v. DeRewal,* 10 F.3d at 103, and a claim of ineffectiveness is made with regard to this issue.

■■■ We begin by noting that the Defendant himself failed to object or raise this issue in the District Court. There is no claim that he informed counsel that he wished to challenge his prior convictions. Under the applicable law pertaining to ineffectiveness, we cannot fault counsel for not raising this issue when the Defendant acknowledged his prior convictions under oath and said at sentencing that he was in full agreement with his attorney.

■■■ There is no actual prejudice because the Defendant's claim has no merit. He has not only acknowledged his prior convictions, but the record in this Court establishes that he had counsel in his state court proceeding.[11] Except for claims of denial of counsel, a defendant cannot attack a prior state conviction. *See Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 1737–38, 128 L.Ed.2d 517 (1994); *United States v. Thomas,* 42 F.3d 823, 824 (3d Cir.1994). The Supreme Court, however, distinguished ineffective assistance of counsel claims from denial of counsel claims, and excluded only the latter from the general rule against collaterally attacking prior convictions used to enhance a sentence. *See Custis,* 114 S.Ct. at 1738. For the foregoing reasons, we believe that Defendant's claims lack merit.

### C. *Crack Cocaine*

■■■ Defendant claims that counsel was ineffective by allowing him to plead guilty because crack cocaine is not a controlled substance under federal law since it is not listed in Schedule II. This claim is frivo-

lous and therefore we cannot fault counsel for not raising it. *See Strickland,* 466 U.S. at 691, 104 S.Ct. 2052 (finding that counsel cannot be ineffective for failing to raise meritless claims). Hundreds of cases in the Third Circuit have resulted in convictions involving crack cocaine or cocaine base, as it is often called. Many circuits have considered this issue and have held that crack cocaine need not be listed by name to be a controlled substance. As the court said in *Sanders v. United States,* 237 F.3d 184, 185 (2d Cir.2001):

> Schedule II lists "[c]oca leaves . . .; cocaine . . .; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph." 21 U.S.C. § 812, Schedule II(a)(4); . . . . Because cocaine base and crack cocaine are mixtures that contain cocaine and are derived from coca leaves, *see United States v. Canales,* 91 F.3d 363, 366–69 (2d Cir.1996) (describing chemical composition of cocaine base and crack cocaine); *United States v. Jackson,* 968 F.2d 158, 161–62 (2d Cir.1992), *superseded by statute on other grounds* (same), both substances are encompassed by schedule II's definition. *Accord United States v. Manzueta,* 167 F.3d 92, 93–94 (1st Cir.1999) (holding that cocaine base and crack cocaine are controlled substances under schedule II).

### D. *Plea Agreement*

■■■ Defendant next claims that the Government breached its plea agreement with him by failing to interview him after he was sentenced and by failing to obtain from him the necessary substantial assistance in the prosecution of others who

---

225, 142 L.Ed.2d 185 (1998).

11. The state court records have been sent to us by the probation officer and placed on our docket. They show that the Defendant was represented by counsel in state court.

have committed criminal offenses, thereby justifying a motion for downward departure under U.S.S.G. § 5K1.1 or under Fed. R.Crim.P. 35. This is in effect a claim of bad faith, and the Defendant has not established cause for his default in not raising this issue in the trial court or on appeal. Nor has he established actual prejudice resulting therefrom. Furthermore, this claim simply has no merit.

There was a written plea agreement in which the Government was given "sole discretion" as to whether to move for a downward departure. The colloquy at the time of the guilty plea amply conveyed to the Defendant the concept that the Government was not required to file a motion for a downward departure. When we found out at the time of sentencing that there would be no motion for downward departure, we inquired from the defense and they informed us that no claim of bad faith was being made.[12]

The Court referred to the case of *United States v. Isaac*, 141 F.3d 477 (3d Cir. 1998). " '[T]o trigger judicial review of the prosecutor's decision [not to move for a downward departure] the defendant must first allege that he ... believes the government is acting in bad faith.' " *Id.* at 484 (quoting *United States v. Khan*, 920 F.2d 1100, 1106 (2d Cir.1990)). Since there was no allegation of bad faith, there was no need for any explanation from the Government at sentencing. Nevertheless, the Government gave an explanation on page 5 of the Government's Sentencing Memorandum, filed of record on January 27, 2000:

In this case, defendant Soto has provided some cooperation with law enforcement authorities. However, he has not provided substantial assistance in the investigation or prosecution of any other person. Therefore, the government is not making a motion for downward departure pursuant to § 5K1.1 of the Sentencing Guidelines.

The defense expressly acknowledged receipt of that memorandum and stated that they did not object to it. (*See* Tr. 1/28/00, at 10.)

The Government's Response in Opposition to Petitioner's Motion Under 18 U.S.C. § 2255 to Vacate, Correct, or Set Aside Sentence provides additional details which are fully consistent with its sentencing memorandum:

Soto was interviewed by the undersigned counsel and DEA in the presence of his attorney on November 10, 1999. Subsequent efforts to follow up on and investigate information that Soto provided in the November 10, 1999 interview resulted in no additional arrests or prosecutions. Having failed to provide substantial assistance in the prosecution of another person who has committed an offense, Soto was not eligible for and did not receive the benefits of a motion for downward departure under U.S.S.G. § 5K1.1.

(Government's Resp. Def's Mot. at 17.) In our view, the Government's reasons are sufficient and nothing put forward by Defendant warrants further inquiry. Not only do we not find evidence of bad faith, we find that the Government acted in good

---

12. THE COURT: Very well.
As I understand it, the defense is not in any way alleging bad faith on the part of the Government in not seeking and not making a motion for downward departure at this time; is that correct?
MR. WYLIE: That is correct, your Honor.

THE COURT: All right. There being no allegations of bad faith, there would be no findings to make in that regard under *United States v. Isaac*. Accordingly, that is not an issue before This [sic] Court.
(Tr. 1/28/00, at 11–12.)

faith. The Defendant has not met his burden of showing by a preponderance of the evidence that the Government acted in bad faith and, in turn, breached its plea agreement with Defendant. *See United States v. Swint,* 223 F.3d 249, 253 (3d Cir.2000); *Isaac,* 141 F.3d at 481–83.

Now that sentencing is over, it is too late for the Government to seek a downward departure. The Government could nevertheless move for a reduction of sentence for substantial assistance under Fed. R.Crim.P. 35(b). The written guilty plea agreement, however, made no mention of any obligation of the Government to file a motion under Fed.R.Crim.P. 35(b) and the Government is under no obligation to file such a motion. *See United States v. Doe,* 940 F.2d 199, 205 (7th Cir.), *cert. denied,* 502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991). Even if there was some obligation, we believe the reasons given for not doing so are sufficient. Accordingly, Defendant's claims have no merit.

### E. *Failure to Appeal*

▆▆▆▆ The Defendant claims that he requested that his attorney file an appeal after sentencing and that his attorney failed to do so. The Supreme Court has determined that, where the defendant in a criminal case is indigent, counsel must file an appellate brief on the defendant's behalf even if he wishes to withdraw from further representation post-trial. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). A defendant has a right, upon conviction in a district court, to an appeal. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 919, 8 L.Ed.2d 21 (1962). This right entitles him to counsel for assistance in preparation of any such appeal. *See Anders,* 87 S.Ct. at 1400.

▆▆▆▆ If a defendant has made some indication to counsel that he wishes to appeal his sentence which counsel did not honor, the defendant is entitled to relief without having to demonstrate prejudice. *See Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969); *United States v. Gipson,* 985 F.2d 212, 215 (5th Cir.1993). Nor does a defendant need to make an outcome-based argument focusing upon whether the end result would have been different had counsel not failed to file the requested appeal. *See Bonneau v. United States,* 961 F.2d 17, 23 (1st Cir.1992) (losing appeal through dereliction of counsel relieves the petitioner of the need to demonstrate meritorious appellate issue); *Abels v. Kaiser,* 913 F.2d 821, 823 (10th Cir.1990) (stating that there is no need to demonstrate prejudice when counsel has failed to file the requested appeal); *Hollis v. United States,* 687 F.2d 257, 258–59 (8th Cir.1982), *cert. denied,* 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983). If counsel fails in his duty to follow his client's wishes, the only proper remedy for such a lapse is for the petitioner to be resentenced with credit for time served so that he may have the chance to perfect a timely appeal. *See Rodriquez,* 89 S.Ct. at 1718; *United States v. Davis,* 929 F.2d 554, 557 (10th Cir.1991).

It remains for us to determine as a factual matter whether or not Defendant actually did request that his counsel file an appeal. It appears that Defendant's counsel, Wendell R. Wylie, Jr., has been suspended and is not currently practicing law. The Government attorney has not been able to contact him. Although the clerk of court was able to contact him initially, he has not returned any further phone calls. Under the circumstances, we will accept the Defendant's statement that he wished to appeal and that he so advised his attorney. Accordingly, we will appoint new counsel. We will also vacate the Defendant's sentence and reimpose it solely for

the purpose of allowing him to take an appeal.

An appropriate order follows.

### ORDER

AND NOW, this 14th day of May, 2001, Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody filed February 21, 2001 is GRANTED to the extent that we hereby vacate and reimpose our prior sentence imposed on January 28, 2000 for the sole purpose of allowing Defendant to file an appeal. Defendant is given credit for all official time served for this offense, and all prior terms and conditions of the sentence remain in full force and effect. All other grounds for habeas corpus relief are DENIED and dismissed without prejudice to Defendant's right to raise these grounds on appeal. Beth A. Knickerbocker, Esq., is hereby appointed as CJA counsel to take said appeal.