Gary ANDRASHKO, Petitioner–
Appellant,

v.

Thomas G. BORGEN, Respondent–
Appellee.

No. 01–1758.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 17, 2003.

Decided Jan. 13, 2004.

Rehearing and Suggestion for Rehearing
En Banc Denied March 1, 2004.*

* Hon. Joel M. Flaum did not participate in the consideration of the petition.

Brett Nolan, Shefsky & Froelich, Chicago, IL, for Petitioner–Appellant.

Marguerite M. Moeller, Office of the Attorney General, Madison, WI, for Respondent–Appellee.

Before KANNE, ROVNER, and WILLIAMS, Circuit Judges.

## ORDER

Wisconsin inmate Gary Andrashko filed a habeas corpus petition under 28 U.S.C. § 2254 raising several claims about his guilty pleas and sentencing for a string of Milwaukee-area armed robberies that culminated in the robbery of a Domino's Pizza where he fired two shots before his gun jammed. A magistrate judge, sitting by consent, denied the petition. We affirm.

## I.

Andrashko committed a rash of masked, armed robberies of gas stations, convenience stores, and fast-food restaurants. In October 1987 he pleaded no contest to six felony counts arising out of the crime spree. Because he already had numerous felony convictions, Andrashko faced enhanced penalties as a repeater. In accordance with the plea agreement, the Circuit Court of Winnebago County dismissed three additional counts but allowed the prosecution to read those counts and several other outstanding charges into the record at sentencing. The State agreed to recommend a sentence of 20 to 30 years to the trial court.

At sentencing in November 1987, prosecutor Barbara Hart discussed the violent nature of Andrashko's crimes and the danger that he posed to the community. First, Hart described Andrashko's nighttime robberies as "a reign of terror for the community, for particularly night-store clerks in the area." Second, Hart dimly portrayed the prospects of rehabilitating Andrashko based on a presentence report that showed an "atrocious" prior juvenile and adult record. Finally, Hart argued that Andrashko posed a continuing threat to the safety of the public because he had not shown any remorse for his actions and had told the probation service that "he felt good when he did crimes." Accordingly, Hart recommended that the court follow the 30–year sentence recommended by the probation office.

Andrashko's trial counsel, George Nesmith, having reviewed the presentence report for a period of approximately twelve minutes the day before sentencing, attempted to make two arguments in support of a lighter sentence. First, Nesmith pointed out that another well-known defendant "wrecked the lives of many more people than ... Andrashko" and "only received 21 years." Next, Nesmith described Andrashko's crimes as the actions of a "young man" who could be rehabilitated after receiving counseling and 10 to 12 years in prison. When Nesmith finished his remarks, the court gave Andrashko the opportunity to make a statement, and Andrashko told the court that he was "sorry."

The state court then proceeded to sentence Andrashko. The court noted Nesmith's reference to the defendant sentenced to 21 years but explained that Andrashko's case was different because of his long history of particularly severe criminal offenses. After noting the large

number of crimes that Andrashko had committed, the severity of the crimes, Andrashko's unrepentant attitude, the possibility that Andrashko would have caused further harm had his gun not jammed, and the fact that Andrashko had committed the crimes only a short time after being released from prison, the court sentenced Andrashko to 30 years on each count to run concurrently to send a "message to others that may engage in a similar activity and ... to protect the public." The court seemed reluctant to sentence in accordance with the plea agreement, noting that the maximum total sentence for Andrashko's crimes was 171 years.

Andrashko did not file a direct appeal from his guilty pleas and subsequent sentences; instead, he filed four separate postconviction motions in the trial court. In Wisconsin, the initial means for a defendant to seek relief from a conviction or sentence is by filing a timely motion with the trial court under Wis. Stat. § 974.02. *State v. Redmond,* 203 Wis.2d 13, 552 N.W.2d 115, 117 (1996). If the motion is denied, the defendant may then file a direct appeal from the conviction with the state appellate court. *Id.* After a direct appeal or after the time for filing a § 974.02 motion has expired, the defendant may file a collateral attack on his sentence under Wis. Stat. § 974.06 if he can show reason for his failure to raise the issue on direct appeal. *State v. Lo,* 264 Wis.2d 1, 665 N.W.2d 756, 762 (2003). Finally, if the defendant believes he received ineffective assistance on appeal, he must petition the appellate court for a writ of habeas corpus. *State v. Knight,* 168 Wis.2d 509, 484 N.W.2d 540, 544 (1992).

Andrashko filed each of his four postconviction motions under Wis. Stat. § 974.06. Although the trial court never considered his second postconviction motion, the court denied the other three motions and was affirmed by the state appellate court each time. Andrashko's fourth and final § 974.06 motion, filed in July 1994, is the basis for his current habeas corpus petition. In the motion Andrashko claimed that: (1) he was incompetent during the criminal proceedings; (2) the trial court abused its discretion by failing to order a competency hearing; (3) the trial court abused its discretion by accepting his pleas without inquiring into his mental condition; and (4) trial counsel was ineffective for failing to call certain witnesses at trial, failing to discuss the case and the presentence report with him, and failing to bring evidence of his incompetence to the court's attention. The trial court denied the motion without a hearing.

In August 1996 the state appellate court affirmed on two separate grounds. As to the first ground, the court confused the nature of Andrashko's initial postconviction motion, erroneously characterizing it as a § 974.02 motion that the court thought had been filed as part of a direct appeal. The court then reasoned that, since Andrashko had failed to raise his claims in this " § 974.02" motion or on direct appeal, he had defaulted them under *State v. Escalona–Naranjo,* 185 Wis.2d 168, 517 N.W.2d 157 (1994). As an alternative ground for affirming, the court held that the claims had not been raised in Andrashko's "most recent" § 974.06 motion (Andrashko's third postconviction motion), and were therefore barred as successive under § 974.06(4). The Wisconsin Supreme Court denied Andrashko's request for review.

After two unsuccessful *Knight* petitions for habeas corpus relief to the state appellate court, Andrashko filed his § 2254 petition in April 1998. Andrashko raised three claims in the body of the petition: (1) counsel was ineffective at trial for failing to investigate the case, for recom-

mending that he plead guilty, and for failing to request a psychiatric examination for him prior to his pleas and sentencing; (2) he was incompetent during his criminal proceedings; and (3) appellate counsel was ineffective. Andrashko did not mention his ineffective assistance claim relating to counsel's failure to put on mitigating evidence until his Motion for Partial Summary Judgment. Ultimately, the magistrate judge held that Andrashko had defaulted all of his claims under *Escalona–Naranjo* by failing to raise them in his "direct appeal," apparently operating under the same misapprehension as the state appellate court that Andrashko had filed an appeal.

The court denied Andrashko's request for a certificate of appealability, but we granted a certificate on the limited issue of whether Andrashko's trial counsel provided ineffective assistance at sentencing and whether that issue has been procedurally defaulted.

## II.

Both parties agree that the magistrate judge erred in denying Andrashko's § 2254 petition on the ground that Andrashko did not raise his claims "on direct appeal" as required by the Wisconsin Supreme Court in *Escalona–Naranjo*. Andrashko never filed a direct appeal, and because his decision to forego direct appeal occurred prior to the date of decision in *Escalona–Naranjo*, he was free to raise the claims in a § 974.06 postconviction motion. *Braun v. Powell*, 227 F.3d 908, 914 (7th Cir.2000); *see also Lo*, 665 N.W.2d at 766 n. 11.

Even though the magistrate judge erred, the State argues that Andrashko still procedurally defaulted his claim of ineffective assistance at sentencing because the state appellate court held, as an alternative basis for its judgment, that Andrashko defaulted the claim by raising it for the first time in a successive § 974.06 motion, *see* Wis. Stat. § 974.06(4); *Smith v. State*, 63 Wis.2d 496, 217 N.W.2d 257, 258 (1974); *State ex rel. Dismuke v. Kolb*, 149 Wis.2d 270, 441 N.W.2d 253, 254 (1989). The State argues that this second ground relied on by the state appellate court is a separate ground from *Escalona–Naranjo* that bars federal review of Andrashko's habeas corpus petition.

The State's argument is correct only if we assume, as the parties do, that Andrashko raised his claim of ineffective assistance of counsel at sentencing in his fourth postconviction motion in state court. However, the record shows that Andrashko never raised in his fourth postconviction motion the particular ineffective assistance claim he argues in his brief before this court. Andrashko argues here that his counsel was ineffective because he failed to present mitigating evidence of his psychiatric problems at sentencing, and he neglected to rebut the arguments of the prosecutor about his violent nature. In his fourth postconviction motion, however, Andrashko asserted only that counsel was ineffective during trial, that counsel should have requested a psychiatric examination prior to sentencing, and that he was incompetent to be sentenced. As Andrashko never presented the claim that trial counsel was ineffective at sentencing to the state court, he could not have procedurally defaulted it in the manner argued by the State.

Instead, our reading of the record leads to the conclusion that, as to the claim he briefs here, Andrashko altogether failed to exhaust his state remedies by *never* presenting the claim to the state courts. Indeed, it appears that none of Andrashko's postconviction motions, except the second postconviction motion that Andrashko eventually dropped, ever presented the issue of counsel's failure to present mitigat-

ing evidence at sentencing. His failure to do so suggests a *different* type of procedural default: issues that have never been raised in state court *and can no longer be raised* may be procedurally defaulted. *See Harris v. McAdory,* 334 F.3d 665, 668 (7th Cir.2003). However, the State never addresses this alternative ground for default in its briefs, instead relying solely on the procedural default analysis previously discussed. In fact, when questioned about this ground for default at oral argument, the State asserted its belief that Andrashko had fully presented his ineffective assistance claim in state court. Accordingly, the State has waived the default, *Moore v. Casperson,* 345 F.3d 474, 494 n. 7 (7th Cir.2003); *Kurzawa v. Jordan,* 146 F.3d 435, 440 (7th Cir.1998), and we must consider the merits of the claim.

### III.

█ Andrashko claims that his trial counsel, Nesmith, "virtually abdicated his role as advocate" at sentencing by failing to rebut the prosecutor's characterization of the crime and the presentence report and failing to present mitigating evidence, thereby forfeiting the opportunity to argue for a sentence of 20 years rather than 30. Specifically, Andrashko points to Nesmith's failure to: (1) rebut Hart's "assertion that [he] was a thrill-seeking criminal," (2) make reference to his troubled childhood, (3) cite his history of psychological problems as a mitigating factor at sentencing, or (4) refer to his "episodes of strange behavior prior to sentencing which would have supported an inference of psychological problems."

A criminal defendant has a constitutional right to the effective assistance of counsel during the criminal proceedings against him. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For a petitioner to establish that his "counsel's assistance was so defective as to require reversal" of a conviction or a

sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Id.* at 687. The prejudice prong of the *Strickland* test is a difficult burden to overcome, as it requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Bell v. Cone,* 535 U.S. 685, 697–98, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). It is not enough for a petitioner to show that "the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693. A petitioner must specifically explain how the outcome at trial would have been different absent counsel's ineffective assistance. *Berkey v. United States,* 318 F.3d 768, 773 (7th Cir. 2003).

Assuming that the limited preparation and argument by Andrashko's trial counsel at sentencing constituted deficient performance, Andrashko still has not made an adequate showing under *Strickland* because he cannot establish prejudice. Andrashko's only argument on prejudice is that it "would have been beneficial to [his] cause" had his counsel attempted to rebut the State's arguments and present mitigating evidence at sentencing. However, *Strickland* requires more than a showing that the evidence would have been beneficial; the mere possibility of a positive effect on the trial court's sentencing decision is too speculative a basis for relief. *See Ducato v. United States,* 315 F.3d 729, 730–31 (7th Cir.2002) (failure of attorney to present mitigation witnesses at sentencing "too uncertain" to justify reversal); *United States v. Ruzzano,* 247 F.3d 688, 697 (7th Cir.2001) (mere possibility of different sentence "falls short of the required showing of a reasonable probability that the sentence would have been different"); *see also King v. Kemna,* 266 F.3d 816, 825 (8th Cir.2001) (possibility that diminished

capacity evidence might have persuaded the court to impose a more lenient sentence is "rank speculation"); *United States v. Workman,* 110 F.3d 915, 920 (2d Cir. 1997) (counsel's failures at sentencing do not establish a reasonable probability of a different sentence given defendant's "undisputed history of criminal and violent conduct"); *United States v. Green,* 680 F.2d 183, 189–90 (D.C.Cir.1982) (the possibility that counsel could have "more eloquent[ly]" presented mitigation evidence at sentencing is "pure speculation").

Even if counsel had presented mitigating evidence at sentencing and done more to rebut the State's arguments, the record belies the conclusion that the outcome at sentencing would have been different. Andrashko does not dispute that he told the probation officer "he felt good when he did crimes," or that "something is missing in his life when he is not doing a crime." This lack of remorse, combined with Andrashko's extensive criminal record and the violent nature of the most recent robbery spree (neither of which Andrashko disputes), led the sentencing court to believe that "a substantial sentence is in order." Accordingly, the court imposed a 30–year sentence, the maximum recommended by the plea agreement. The court's comments in imposing this sentence show that it was unlikely to have changed its mind in the face of mitigating evidence:

> There isn't much that can be said in your behalf and in mitigation here, Mr. Andrashko, other than the fact that fortunately no one was directly injured.... You've only been outside the State Prison System for a short period of time and here you're going back. We have a strong interest here in this case in protecting the public. We have to impose a sentence that's going to be lengthy enough that will really protect the public and hopefully give you–the authorities adequate time to hopefully treat whatev-

er problem you have, Mr. Andrashko, because it's a serious and dangerous problem....

As the court relied primarily on factors that Andrashko does not dispute on appeal, Andrashko cannot show that the court would have imposed a lighter sentence had his counsel presented mitigating evidence relating to Andrashko's troubled childhood and mental condition. *See Henderson v. Thieret,* 859 F.2d 492, 500 (7th Cir.1988) ("Given the severity of the crime committed (murder and attempted robbery), and the type of weapon used by [petitioner's] accomplice ..., it is extremely unlikely that the evidence [petitioner] now claims he would have presented at the sentencing hearing would have had any effect on the sentencing proceedings, the sentencing judge was extremely concerned both with regard to the use of the [weapon] and the callousness of the young offenders."); *Workman,* 110 F.3d at 920; *King,* 266 F.3d at 825. This conclusion is bolstered by Andrashko's admission on appeal that all of the mitigating evidence was contained in the presentence report and therefore was already available to–and presumably considered by–the trial court. Andrashko's counsel might have been able to present the mitigating factors in a more positive light, but such a possibility does not establish prejudice. *See Green,* 680 F.2d at 190.

AFFIRMED.